**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>**QCD FINANCIAL, LLC,**<br><br>Debtor. | Hon. Michael B. Slade<br><br>Case No. 25-bk-11551<br><br>Chapter 7 |

# NOTICE OF MOTION

TO: See attached Service List

PLEASE TAKE NOTICE that on September 15, 2025, at 9:30 a.m., I will appear before the Honorable Michael B. Slade, or any judge sitting in that judge's place, either in courtroom 642 of the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn Street, Chicago, Illinois, 60604, or electronically as described below, and present the City of Chicago's Motion for Order for Relief under 11 U.S.C. § 303(h), a copy of which is attached.

**All parties in interest, including the movant, may appear for the presentment of the motion either in person or electronically using Zoom for Government.**

**To appear by Zoom using the internet**, use this link: https://www.zoomgov.com. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at (669) 254-5252 or (646) 828-7666. Then enter the meeting ID and passcode.

**Meeting ID**. The meeting ID for this hearing is **160 817 7512** and the passcode is **623389**. The meeting ID can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

Dated: September 2, 2025

Respectfully submitted,

**CITY OF CHICAGO**

Corporation Counsel
Mary B. Richardson-Lowry

By: /s/ David Paul Holtkamp
Deputy Corporation Counsel

David Paul Holtkamp, Deputy Corporation Counsel
City of Chicago Department of Law
121 N LaSalle St., Ste. 400
Chicago, Illinois 60602
(312) 744-6967
David.Holtkamp2@cityofchicago.org
COALservice@cityofchicago.org

## CERTIFICATE OF SERVICE

I, David Paul Holtkamp, an attorney, hereby certify that on September 2, 2025, I caused a copy of the attached Notice of Motion and accompanying Motion to be served via the court's electronic noticing system for Registrants on those designated to receive such service as provided on the attached Service List and on Non-Registrants via U.S. Mail as provided on the attached Service List.

/s/ David P. Holtkamp

## SERVICE LIST

**Registrants**
(Via CM/ECF)

- **Adam G. Brief** Ustpregion11.es.ecf@usdoj.gov
- **Elizabeth Conard** elizabeth.conard@cityofchicago.org
- **David Paul Holtkamp** david.holtkamp2@cityofchicago.org
- **Laura Lefkow-Hynes** laura.lefkow-hynes@cityofchicago.org

**Non-Registrants**
(Via U.S. Mail)

**QCD Financial, LLC**
c/o Jim Mantas, Treasurer
15717 Shire Drive
Orland Park, Illinois 60467

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Hon. Michael B. Slade |
| **QCD FINANCIAL, LLC,** | Case No. 25-bk-11551 |
| Debtor. | Chapter 7 |

**MOTION FOR ORDER FOR RELIEF**
**UNDER 11 U.S.C. § 303(h)**

The City of Chicago seeks entry of an order for relief against QCD Financial, LLC ("QCD"), under 11 U.S.C. § 303(h) and Fed. R. Bankr. P. 1013(b). QCD is a shadowy land speculator that has owned nearly two hundred lots across Chicagoland. For over a decade, QCD has failed to maintain its properties in compliance with the City's Municipal Code and, as a result, racked up millions in unpaid fines to the City.

For years, QCD evaded the City's collection efforts by fabricating addresses, creating shell companies, disregarding state court orders, and making fraudulent transfers. The City's vigorous pursuit of QCD revealed Jim Mantas secretly runs the company. The City has QCD's operating agreement, which provides Mantas is QCD's treasurer. The City knows about QCD's bank account, which Mantas opened as QCD's member and had exclusive access to. Mantas recently filed his own chapter 7 case after the City sought to avoid over $348,000 in fraudulent transfers from QCD to him personally. He is attempting to absolve himself of any liability or association with QCD and its properties.

But QCD still owns at least 88 properties in the City of Chicago and at least 122 properties in total. QCD and Mantas appear content to allow these lots to become

ownerless, zombie properties. That is dangerous and unacceptable. This bankruptcy is needed to appoint a trustee to sell these lots and repay creditors.

As provided below, all the conditions to enter an order for relief against QCD have been satisfied. The City properly served its involuntary petition and the time to answer has expired. This motion should be granted and an order for relief entered.

## I. PARTIES AND PLAYERS

*The City of Chicago.* — The City is a municipal corporation organized and existing under the laws of the State of Illinois.

*QCD Financial, LLC.* — QCD is an Illinois limited liability company, created on February 23, 2012, that was involuntarily dissolved for nonpayment by the Illinois Secretary of State on August 8, 2025. *See* SOS QCD Entity Page, attached as **Exhibit A**. QCD's stated principal place of business is 3 Grant Square, #212, Hinsdale, Illinois. *Id.* That address is a UPS Store mailbox. QCD's nominal registered agent is Daria Balina, with the same UPS Store mailbox listed as her address. *Id.* As of the petition date, QCD was the title holder of at least 122 properties in the City of Chicago and its suburbs.

*Senectum Financial, LLC.* — Senectum Financial, LLC is QCD's nominal sole manager. *Id.* It was created on January 25, 2012, and involuntarily dissolved by the State on July 11, 2025, for nonpayment. *See* SOS Senectum Financial Entity Page, attached as **Exhibit B**. Senectum Financial's stated principal place of business is 8200 W 185th St. Ste. H22, Tinley Park, Illinois. *Id.* That's a vacant office that an unaffiliated attorney used to lease. Senectum Financial's nominal registered agent is Daria Balina, with the same UPS Store mailbox at 3 Grant Square, #212, in Hinsdale,

listed as her address. *Id.*

*Senectum, LLC.* — Senectum, LLC is Senectum Financial's nominal sole manager. *Id.* It was created on December 27, 2011, and involuntarily dissolved by the State on June 13, 2025, for nonpayment. *See* SOS Senectum Entity Page, attached as **Exhibit C**. Senectum's stated principal place of business is the UPS Store mailbox at 3 Grant Square, #212 in Hinsdale. *Id.* Senectum's nominal registered agent is Daria Balina, with the same UPS Store mailbox listed as her address. *Id.* Daria Balina is also the nominal sole manager of Senectum at that same UPS Store mailbox address. *Id.*

*Jim Mantas.* — Jim Mantas is an individual that is domiciled at 15717 Shire Drive, Orland Park, Illinois, 60467. He filed a chapter 7 bankruptcy petition on June 30, 2025, *In re Jim Mantas*, Case No. 25-bk-09992 (Slade, J.). Mantas is the treasurer of QCD, Senectum Financial, and Senectum, as provided in their operating agreements. *See* Operating Agreements, attached as **Exhibit D**. Those agreements also provide that Mantas is the ultimate manager if Balina were incapacitated or upon other events. *Id.* Mantas opened a bank account at JPMorgan Chase for QCD as its member and has always had exclusive control of that account. *See* JPMorgan Chase Business Signature Card, attached as **Exhibit E**. Mantas has always used that bank account as his personal piggybank.[1]

*Daria Balina.* — Daria Balina may not be a real person and if she is, she has no

---

[1] Mantas sat for an examination as required by a citation to discover assets on March 12, 2025. During that examination, Mantas testified that he used the QCD Chase Account to make every-day personal purchases completely unrelated to QCD. The City will provide that transcript upon request.

control over QCD, which rests with Mantas. Mantas asserts that he worked with Balina for over a decade, but cannot provide Balina's address, phone number, or email address, or any tangible evidence of her existence.[2] There is no evidence that any assets or funds from QCD went to Balina, instead they were all went to Mantas.

## II. BACKGROUND

### A. QCD's Business and Operations.

QCD was created in early 2012 and is nominally owned by Senectum Financial, LLC, which in turn is nominally owned by Senectum, LLC. *See* Exs. A-B. Senectum, LLC is then nominally owned by Daria Balina. *See* Ex. C. All three entities are manager-managed, with Senectum Financial managing QCD, Senectum managing Senectum Financial, and Balina purportedly managing Senectum. *See* Exs. A-C.

QCD's business model is to purchase distressed or vacant lots for nominal prices, neglect their maintenance, and then advertise them to unsophisticated parties as investment opportunities. As of the filing date of this case, QCD owns at least 122 properties throughout the City and suburbs. *See* Property List, attached as **Exhibit F**.

Since 2013, the City has secured over 1,754 judgments against QCD for health and safety violations – more than nearly any other property owner in the City. These judgments are for all kinds of violations that show the properties are completely unmaintained and hazardous to the City residents that must live next to them.

For example, 838 N. Lavergne Ave. appears to be used for storage of construction equipment and debris, 1342 W. 110th Pl. is vastly overgrown between two single

[2] Again, Mantas testified to this at his citation examination. The City will provide the transcript upon request.

family homes, 6945 S. Claremont Ave., is an unfenced and unmaintained lot, and 1508 W. Garfield Blvd. appears to be simply an open dump. Picture of those lots are below:



*Figure 1 - 838 N. Lavergne Ave.*



*Figure 2 - 1342 W. 110th Pl.*



*Figure 3 - 6945 S. Claremont Ave.*



*Figure 4 - 1508 W. Garfield Blvd.*

The City has recorded a significant number of those judgments as liens with the Cook County Recorder of Deeds and served a citation to discover assets on QCD seeking to collect on 1,187 of those judgments, totaling $2,781,434.73. *See City of Chicago v. QCD Fin., LLC*, Case No. 2024M1655779; List of Judgments, attached as **<u>Exhibit</u>**

**G**; Citation to Disc. Assets, attached as **Exhibit H**. The citation to discover assets to QCD remains pending. Since the City registered those judgments and served the citation to discover assets, QCD has accrued more than $100,000.00 in new debt owed to the City.

**B. Jim Mantas controls and manages QCD.**

While QCD's structure indicates Daria Balina has ultimate control, she is either fabricated or simply a front. She has no control over QCD. Instead, Jim Mantas exclusively manages and controls QCD. This is initially shown by Senectum's operating agreement. Senectum is the ultimate manager of QCD under the operating agreements. And while Senectum's operating agreement provides that Balina is the manager, it goes on to provide that "in the event of death, incompetency, resignation, removal, bankruptcy, or the execution of an assignment for the benefit of creditors of Daria Balina, then Jim Mantas shall replace her as Manager." *See* Ex. D. Additionally, the only officer of all three entities listed in the operating agreements is Jim Mantas, who is the treasurer of each entity. *See id.*

As treasurer, Mantas is the "principal accounting and financial officer of the company. He shall: (a) have charge of and be responsible for the maintenance of adequate books of account for the company; (b) have charge and custody of all funds and securities of the company; and (c) perform all the duties incident to the office of treasurer and such other duties as from time to time may be assigned to him by Manager." *Id.* Thus, he should keep all the books and manage all the money.

Mantas has always had exclusive control over QCD's bank account at JPMorgan Chase Bank ("Chase"), an account ending in x1848 ("Chase Account"). *See* Ex. E.

Mantas signed the business depository certificate to open the Chase Account as QCD's "Member or Manager." *Id*. Mantas also signed the business signature card for the Chase Account as QCD's "Member." *Id.* There are no other signatories, not even Balina, so only Mantas may access the Chase Account. *Id.*

On February 1, 2018, QCD had $1,312.38 in the Chase Account. Over the next seven years, QCD would earn and deposit approximately $368,583.80 into the Chase Account. Most deposits aligned with property sales. And once QCD deposited its sale proceeds, Mantas took the money or used it for his own expenses, including liquor and cigars. In total, QCD made 2,090 transfers totaling $348,218.62 to Mantas. For a summary of those transfers, refer to Table 1 below. By the time the Chase Account was frozen in early 2025, only $247.47 remained in the Chase Account.[3]

| Category | Amount | Examples |
|---|---|---|
| Cash | $135,635.69 | N/A |
| Groceries and Gas | $61,726.15 | Costco, Pete's, Meijer, Kenwood Liquor |
| Credit Cards | $53,421.19 | Capital One, Wells Fargo, FirstBank |
| Leading Realtor's Corp. Bank Account | $32,100.00 | N/A |
| Internet and Phone | $14,394.77 | T-Mobile/ Sprint |
| Mantas's Personal Bank Account | $14,300.00 | N/A |
| Merchandise | $14,204.47 | Boomland Fireworks, Best Buy, Young's Appliances |
| Car | $9,312.81 | Auto Loan, Safelite, A & J Automotive |
| Utilities | $8,586.06 | ComEd, Village of Orland Park Water Billing, Nicor Gas |

[3] The City has copies of the Chase Account bank statements and has analyzed them to produce these conclusions. The City will file the bank statements if needed.

| Category | Amount | Examples |
|---|---|---|
| Other | $2,342.12 | FOID Card, Nationwide, Precision Care Dental |
| Restaurants | $2,159.36 | Lithuanian Plaza, McDonalds, Yard House |

*Table 1.*

But Mantas's control goes well beyond just using all QCD's funds as his own personal funds. Mantas, a real estate agent and broker, has managed QCD's business—land speculation—since the very beginning. Mantas acted as the authorized signatory for QCD's first property purchase. Cook County Recorder ("CCR") Doc. No. 1216349036. In fact, all QCD's early property acquisitions involve only Mantas, and not Balina or any other person operating for QCD. *See* CCR Doc. Nos. 1317016048, 1317016049, 1317016050, 1320739108, 1320739109, 1320739110, 1320739111. The first evidence of Balina emerged on April 16, 2014, when Balina purportedly transferred a QCD property. *Id.* 1411442094. Mantas, however, notarized that deed and has notarized all of Balina's purported signatures since then. *See, e.g., id.* 2215322012, 2130046040, 2127919002, 2106219035, 2107819022, 2303457002. Mantas's brokerage company, The Leading Realtors Corp., has represented QCD in at least 67 real estate transactions since July 10, 2018. *See* SOS Leading Realtors Entity Page, attached as **Exhibit I**.

Mantas also receives legal process for QCD. Again, QCD, Senectum Financial, and Senectum all use the UPS Store mailbox at 3 Grant Square #212 in Hinsdale as their registered agent's office. Ex. A, Attach. 2. This violates state law, which requires an actual office. 805 ILCS 5/5.05. Mantas, and not Balina, registered for that mailbox on

QCD's behalf, and only Mantas has access to the mailbox. Thus again, Mantas receives all legal process, not Balina. Mantas is in control of QCD.

**C. The City's Enforcement Efforts.**

Land speculators often target the City's South and West sides. Most of these purchasers merely buy vacant lots for some nominal sum and then do nothing to maintain them. They let them become overgrown with weeds and brush in the best of cases and allow them to become hazardous open dumps for tires, broken-down cars, and construction debris in some of the worst. They do not live in the neighborhoods they harm or consider the residents that do. That is exactly what QCD and Mantas have done here.

The City is committed to bringing accountability to these land speculators, including QCD and Mantas. The City registered over 1,000 judgments in state court late last year and issued citations to discover assets to QCD, Mantas, and other third parties. After reviewing thousands of pages of documents and examining Mantas, the City filed a fraudulent transfer petition against Mantas seeking over $348,000.00.

Faced with over $348,000.00 in liability for living off QCD's bank account, Mantas filed his own chapter 7 petition on June 30, 2025, now pending before the Court as *In re Mantas*, Case No. 25-bk-09992 (Slade, J.). However, contrary to all the evidence and documents showing Mantas is in control of QCD, he failed to list the entity anywhere in his bankruptcy filing. On Schedule A/B he failed to disclose having any interest in QCD even though he signed documents to open the Chase Account stating he was a member. *See* Sched. A/B, Dkt. No. 15, at 4, ¶¶ 19 (list all interests in any LLC); 37 (list all equitable interest in any business-related property). He didn't claim

any kind of interest in the properties QCD nominally owns. *Id.* ¶¶ 1 (list all equitable interest in real property); 25 (list all equitable or future interests in property); 37 (list all equity interest in any business-related property). Nor did Mantas list his interest in the QCD's bank account that he certainly controls and uses for personal purposes. *Id.* ¶ 35 (list any other financial assets).

On his Statement of Financial Affairs ("SOFA"), Mantas claims to have earned $38,285.00 in total in 2024. SOFA, Dkt. No. 17, at 2,¶ 4. But he used the QCD Chase Account to cover over $39,000 in personal expenses in the same year, which is certainly income. He also failed to list any interest in QCD on the SOFA when asked about any interest in the past 4 years, including whether he was an officer, manager, or member during that time. *Id.* ¶ 27.

QCD now has at least 122 properties that need to be maintained and ultimately sold to repay creditors. Mantas, the person who controls QCD, is now trying to absolve himself of his interest, the company is not in good standing with the Secretary of State, and QCD's purported registered agent and manager only lists a UPS Store mailbox for service — which is now closed. This leaves no one exercising control over these vacant lots and no one available for the City to work with to make sure they are not life-threatening nuisances. A trustee is needed immediately.

## III. <u>ARGUMENT</u>

All the conditions to enter an order for relief against QCD have been satisfied. The City properly served its involuntary petition and the time to answer has expired. Under § 303 and Bankruptcy Rule 1013 the Court should grant this motion and entered an order for relief under chapter 7 against QCD.

### A. The City Met All Requirements to File an Involuntary Petition.

An involuntary case may only be filed under chapter 7 or 11 and against a debtor that is eligible to be a debtor under that chapter. *See* 11 U.S.C. § 303(a). The petitioning creditor must hold an unsecured claim greater than $21,050, and such claim cannot be the subject of a bona fide dispute or contingent as to liability. *See id.* § 303(b). Additionally, there must be fewer than 12 such unsecured creditors, or else there must be three or more petitioning creditors. *See id.* If the petition is not timely contested, then "the court shall order relief against the debtor…" *See id.* § 303(h).

First, the City has filed this petition under chapter 7, and QCD, as a limited liability company, is eligible for relief under that chapter. *See id.* § 109(b).

Second, the City has an unsecured, undisputed, noncontingent claim for more than $21,050. The City has obtained administrative judgments against QCD from its Department of Administrative Hearings on 1,754 health and safety violations now totaling over $2,781,434.73. The City registered those administrative judgments against QCD with the Circuit Court of Cook County, to pursue post-judgment collections proceedings. *City of Chicago v. QCD Fin., LLC*, Case No. 2024M1655779.

These judgments "may be enforced in the same manner as a judgment entered by a court of competent jurisdiction." 65 ILCS 5/1-2.1-8(b); *see also, Cammacho v. City of Joliet*, 240 N.E.3d 1137, 1148 (Ill. 2024). Thus, these administrative judgments have the same effect as a judgment entered by a state court. The *Rooker-Feldman* doctrine prevents this Court from reviewing the propriety of those state judgments. *See Edwards v. Illinois Bd. of Admissions to Bar,* 261 F.3d 723, 728 (7th Cir. 2001). If QCD disagreed with the judgments, it should have proceeded through the state court

appeals process. *See id.* It did not. Unappealable judgments are not subject to *bona fide* dispute, nor are they contingent.

QCD has also incurred over $100,000.00 in additional debt to the City since the City registered the initial judgments and served the citation. This unquestionably leaves more than $21,050 in unsecured, undisputed, noncontingent debt to the City.

Third, there are fewer than a dozen unsecured creditors with undisputed, noncontingent claims. The City has the burden of conducting a reasonable inquiry into the number of eligible creditors. *See In re Fox*, 1994 WL 484596, at *6 (N.D. Ill. Sept. 2, 1994). Once it has, and if the debtor answers that there are 12 or more eligible creditors, the debtor must provide the name and addresses of all creditors and provide a short statement of the nature and amount of each creditor's claim. Fed. R. Bankr. P. 1003(b). Ultimately the debtor has the information regarding its own creditors.

After a diligent inquiry, due to the nature of QCD's business activities, the City is only aware of its own claims against the QCD, the County for property taxes, and the Villages of South Holland and Evergreen Park for violations of their ordinances. QCD may also owe funds to City Suburban Service Inc., the Illinois Department of Revenue, and the U.S. Internal Revenue Service. However, those would likely to contingent, or subject to bona fide dispute and thus cannot be counted in the eligible creditor number. Thus, the City is aware of four total creditors that may be counted, but it does not know the value or whether those other claims are contingent or subject to bona fide dispute. The City believes that there are fewer than 12 eligible creditors. Its petition was properly filed.

### B. Summons has Been Served, and the Debtor is in Default.

Pursuant to § 303(h), "[i]f the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed." 11 U.S.C. § 303(h). Bankruptcy Rule 1013(b) likewise provides that "[i]f the petition is not contested within the time allowed by Rule 1011, the court must issue the order for relief on the next day or as soon as practicable." Fed. R. Bankr. P. 1013(b).

The City filed its involuntary petition under chapter 7 against QCD on July 29, 2025. Dkt. No. 1. The summons was issued the next day. Dkt. No. 2. Pursuant to Bankruptcy Rules 1010 and 7004(b), the City executed services of the summons and involuntary petition by mailing it to Mantas as an officer for QCD at the address Mantas listed on his own bankruptcy petition. Dkt. No. 4. The letter was not returned. Thus, QCD has been properly served.

The deadline to file an answer or response to the involuntary petition was due by August 20, 2025. *Id.* No response or answer was filed. Thus, the petition is not contested. Pursuant to § 303(h) and Rule 1013(b) the court "shall" or "must" enter an order for relief.

## IV. CONCLUSION

All the requirements to enter an order for relief under chapter 7 against QCD have been met. Therefore, the City of Chicago respectfully requests that this Court enter an order substantially in the form submitted herewith granting this motion and enter an order for relief under chapter 7 against QCD.

Dated: September 2, 2025

Respectfully submitted,

**CITY OF CHICAGO**

Corporation Counsel
Mary B. Richardson-Lowry

By: /s/ David Paul Holtkamp
Deputy Corporation Counsel

David Paul Holtkamp, Deputy Corporation Counsel
City of Chicago, Department of Law
121 N LaSalle St., Ste. 400
Chicago, Illinois 60602
(312) 744-6967
David.Holtkamp2@cityofchicago.org
COALservice@cityofchicago.org